**PUROLATOR, INC., Plaintiff,**

v.

**TIGER INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 81–0228.**

United States District Court, District of Columbia.

Feb. 18, 1981.

Donald J. Mulvihill and David R. Hyde, Washington, D. C., for plaintiff.

John Barnum, Washington, D. C., for defendant.

MEMORANDUM

GESELL, District Judge.

This is an action for equitable relief brought pursuant to section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (1976). Purolator seeks to enjoin Tiger from purchasing additional Purolator common stock in the open market on the ground that Tiger's disclosures on its required Schedule 13D statement are misleading.

---

The Court denied a temporary restraining order on February 3, 1981, at a hearing held one day after the suit was filed. However, a prompt hearing was scheduled on Purolator's prayer for a preliminary injunction and discovery was expedited. At the preliminary injunction hearing on February 13, the parties agreed that the record was fully developed and acceded to submission for final judgment as permitted under Rule 65, Fed.R.Civ.P., subject to an opportunity to file further material on February 17. All evidence has now been received and the matter is ripe for decision on the merits, aided by extensive briefing from experienced counsel on both sides. Because matters of this type require prompt decision, this brief memorandum containing the Court's findings of fact and conclusions of law must suffice.

Both Tiger and Purolator are publicly held corporations and their common stocks are registered pursuant to section 12 of the Securities Exchange Act of 1934. Tiger has long been interested in competing in the courier segment of the retail air freight market as a logical extension of its air services. It has considered and studied various small package express business possibilities for affiliation, including possible acquisition of Purolator's profitable ground courier services which constitute a substantial segment of Purolator's entire business. In the past, representatives of the two companies have conferred about possible joint ventures but they have been unable to reach a mutual accommodation.

Tiger's interest in Purolator's courier service has, however, continued, and on September 18, 1980, Tiger began purchases of Purolator's common stock on the open market. On January 14, 1981, Tiger's acquisitions totaled 244,400 shares, at a cost of almost $8 million, and exceeded five percent of Purolator's outstanding common stock. Tiger was then required to file a Schedule 13D statement within ten days, setting forth certain information regarding Tiger's purchases and future plans.

Tiger filed the required statement on January 23, 1981. In its Schedule 13D, Tiger stated that its purpose in buying the shares was "to acquire a significant minority interest in Purolator" and announced that Tiger was "prepared to explore with the management of Purolator the possibility of Tiger acquiring Purolator's Services Group." The statement also said that the source of the funds for the stock purchases was "general corporate funds." Since filing the initial Schedule 13D on January 23, Tiger has continued purchasing shares of Purolator and has twice amended its Schedule 13D to report the additional shares acquired. Tiger's latest amendment discloses that as of February 12, 1981, Tiger held 357,600 shares of Purolator common stock, constituting eight percent of the outstanding shares.

The thrust of Purolator's complaint is that Tiger's Schedule 13D is not legally sufficient in that (a) it does not disclose in the "Purpose of Transaction" section an alleged intent or plan to acquire control of Purolator; (b) it does not disclose in the "Source of Funds" section that the proceeds Tiger received from an issue of convertible debentures on August 28, 1980, were intended to be used to purchase Purolator shares, and thus that the source of funds was borrowed money rather than general corporate funds; and (c) it does not disclose elsewhere in the schedule certain regulatory procedures and approvals Tiger would have to follow or obtain in the event that it acquires control of Purolator. Tiger responds by stating that (a) it has no plan of acquiring control of Purolator and that the "Purpose of Transaction" section accurately reflects the only plans that Tiger now has; (b) the "Source of Funds" statement is accurate as written and that the proceeds from the debenture offering were not used to purchase Purolator stock; and (c) there was no need to indicate possible regulatory problems because those problems would arise only if Tiger intended to gain control of Purolator and it has no such intention at this time.

The law to be applied in this case is clear. Section 13(d) is a disclosure statute. It is intended to protect investors by

enabling them to receive facts that are material to an informed investment decision. *See, e. g., General Aircraft Corp. v. Lampert,* 556 F.2d 90 (1st Cir. 1977); *Financial General Bankshares, Inc. v. Lance,* [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,403 (D.D.C.1978). A full, fair, and honest disclosure is required, *SEC v. Savoy Industries, Inc.,* 587 F.2d 1149, 1165 (D.C. Cir.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979), but this does not include disclosure of possible plans that are indefinite, tentative, or still unformed. Disclosure of indefinite plans does not serve the purposes of 13(d) and, indeed, may actually mislead investors. In judging the adequacy of a Schedule 13D statement, fair accuracy, not perfection, is the appropriate standard. *Laurenzano v. Einbender,* 448 F.2d 1, 6–7 (2d Cir. 1971).

During expedited discovery, Purolator obtained broad access to files of Tiger, deposed key officers of the company, and pursued its inquiries by deposing a representative of Dominick & Dominick, the broker handling Tiger's purchases. A careful review of the facts thus developed supports the testimony before the Court of Wayne Hoffman, Tiger's chief executive officer. Hoffman testified categorically that Tiger does not have any present plan or intent to acquire control of Purolator. He confirmed that Tiger has a keen interest in the ultimate acquisition of Purolator's courier services and desired to enter into discussions with Purolator's management in the hope that these services could be acquired by Tiger. But it is apparent from the testimony, the documents, and the depositions that Tiger has not prepared any plan for carrying out such an acquisition and, indeed, is presently of the view that it does not have sufficient information concerning Purolator's courier operations to formulate a concrete business plan. The Court accepts Hoffman's testimony that Tiger has made no decision to acquire control of Purolator and that it has made no plan for acquiring control of Purolator.

There is no indication that Tiger is planning a tender offer or that it has made a concerted approach to holders of large blocks of stock. Tiger's broker, Dominick & Dominick, must confirm all purchases daily and, in any event, has no authority to purchase shares beyond a 9.9 percent interest in Purolator. Hoffman denied any interest in placing representatives of Tiger on Purolator's Board of Directors.

Tiger has been purchasing Purolator stock in the hope that its developing substantial interest in the company will serve as leverage to induce Purolator's management to enter into serious discussions relating to its courier business. So far this hope has not materialized, and Tiger may continue buying stock. Tiger has always recognized, however, that its strategy might not succeed.* It is feeling its way. Its plans are tentative and of long range.

Despite Tiger's showing, Purolator insists that a plan and intent to acquire control of Purolator should be inferred from a variety of factors: Tiger's files reflect Tiger's keen interest in acquiring Purolator's Services Group; Tiger has acquired other companies; Tiger has remained aggressive in acquiring Purolator despite rebuffs from Purolator's management; and selected phrases from documents and depositions provide grounds for suspicions that Tiger may seek to acquire control of Purolator if necessary to acquire the courier services group. The Court finds, however, that the inference urged is not sufficient to overcome direct evidence which the Court finds credible.

Absent a present plan or intent to acquire control of Purolator, the Court must nonetheless consider whether the disclosures made by Tiger are adequate properly to inform investors. Tiger's expressed hope of acquiring Purolator's courier division is made plain in the second paragraph of Item 4 of its 13D statement, in which Tiger announces that it "is prepared to explore with the management of Purolator the possibili-

---

* In its Schedule 13D statement, Tiger notes that "it may also decide to dispose of its holdings in Purolator."

ty of Tiger acquiring Purolator's Services Group...." This statement cannot be read in isolation, but must be read together with the preceding paragraph in which Tiger declares its present purpose "is to acquire a significant minority interest in Purolator." The only fair inference of Item 4 read as a whole is that Tiger's purchase of a significant minority interest in Purolator is being undertaken in an attempt to enhance its ability to gain the attention of Purolator's management, thus opening an opportunity to negotiate for the purchase of the courier operations.

A similar situation was presented in *Jewelcor, Inc. v. Pearlman*, 397 F.Supp. 221 (S.D.N.Y.1975), and the Court finds the reasoning of that decision persuasive. Tiger's statement that it was prepared to explore the acquisition of the Services Group "necessarily implied" that one of the reasons it had bought Purolator stock was to aid this endeavor. *Id.* at 237. Although further elaboration might have been possible, the statement as written is adequate to meet the statutory standard.

Other issues fall by the wayside once this central issue is resolved. The proof fails to establish that Tiger issued debentures with a view to financing an acquisition of Purolator. The debenture issue was floated to take prompt advantage of a favorable market condition and to raise funds for Tiger's general operating purposes. It was primarily used to reduce a portion of Tiger's high interest debt. Only borrowings undertaken "for the purpose of acquiring" stock must be disclosed in Schedule 13D, Item 3. *E. g., Standard Metals Corp. v. Tomlin*, [1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,606 (S.D.N.Y.1980); H.R.Rep.No.1711, 90th Cong., 2d Sess. 8 (1968), U.S.Code Cong. & Admin.News 1968, p. 2811. There is no proof that Tiger's debenture offering was issued for such a purpose. The funds obtained were merged with other corporate funds. It is futile to attempt to trace individual dollars in the accounts of a corporation such as Tiger, but the Court is satisfied from the proof as a whole that funds obtained from the debenture offering were not used or intended to be used in any

significant way for the purchase of the Purolator stock. Tiger's disclosure regarding its source of funds was adequate.

Finally, the Court finds that the absence of any reference in the Schedule 13D statement regarding regulatory restraints upon any acquisition by Tiger of control is of no consequence because there has been no showing that Tiger actually has a plan to acquire control. There is no requirement that Tiger indicate problems that might arise if Tiger embarked on a course of conduct that it has not chosen to take. Indeed, such disclosures might well be improper on a Schedule 13D statement under the facts as adduced.

In sum, the Court believes that investors were adequately informed by the Schedule 13D as filed. Purolator has failed to meet its burden of proof by a preponderance of the evidence.

For the foregoing reasons the complaint is dismissed. Each party shall bear its own costs. The Clerk of Court is directed to enter judgment accordingly.