**MEDICAL IMAGING CENTERS OF AMERICA, INC., Plaintiff/Appellant,**

v.

**Warren G. LICHTENSTEIN, et al., Defendants/Appellees.**

Civil No. 96–0039–B.

United States District Court, S.D. California.

Feb. 14, 1996.

Peter H. Benzian, Latham & Watkins, San Diego, CA, James W. Baker, Latham & Watkins, San Diego, CA, for plaintiff.

Donald G. Rez, Cynthia A. Fissel, Sullivan, Hill, Lewin, Rez, Engel & Labazzo, San Diego, CA, David E. Bamberger, Olshan, Grundman Frome & Rosenzweig, New York City, Paul Gonson, Securities & Exchange Commission, Washington, DC, as Amicus Curiae, for defendants.

**ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER STAYING DISCOVERY BY PLAINTIFF/APPELLANT PENDING RESOLUTION OF DEFENDANTS'/APPELLEES' MOTION TO DISMISS**

BREWSTER, District Judge.

On February 7, 1996, this Court held a hearing in the above-captioned matter con-

sidering Plaintiff's Objection to Magistrate Judge Anthony J. Battaglia's ruling of January 19, 1996, which denied Plaintiff's Motion for Expedited Discovery and granted Defendants' Motion for a Stay of Discovery. Peter H. Benzian, Esq. and James W. Baker, Esq. appeared on behalf of Plaintiff/Appellant, Medical Imaging Centers of America (MICA). Donald G. Rez, Esq., Cynthia A. Fissel, Esq. and David E. Bamberger, Esq. appeared on behalf of the Defendants/Appellees, Warren F. Lichtenstein, et. al. Paul Gonson, Esq. appeared on behalf of the Securities and Exchange Commission, which has entered in this case as Amicus Curiae.

After due consideration of the parties' briefs and arguments in this matter, the Court AFFIRMS the Magistrate Judge's Order.

## I. INTRODUCTION

On December 22, 1995, Congress passed the Private Securities Litigation Reform Act of 1995 (hereinafter "Reform Act"). This appeal presents a case of first impression interpreting a provision of these new amendments to the federal securities laws which it is suggested was designed to prevent discovery "fishing expeditions" by plaintiffs.

The parties are before this Court pursuant to an action filed by Appellant alleging various violations of federal and state law by Appellees, and requesting declaratory and injunctive relief. Appellant is seeking, among other things, to enjoin Appellees' continuing violations of disclosure requirements by acquiring shareholders, particularly with respect to a special shareholders meeting scheduled for February 26, 1996, which was called by Appellees pursuant to California Corporations Code §§ 600–601. Appellees have filed a proxy statement and indicated their intention to unseat the current Board of Directors of MICA at this meeting.

On January 10, 1996, following Appellees' call for the special meeting, Appellant filed a Complaint seeking damages alleging (1) violations of Section 13(d) of the Securities Exchange Act (hereinafter "1934 Act"), 15 U.S.C. § 78m(d)(1);[1] and (2) tortious interference with economic relations. In response to Appellant's Complaint, Appellees filed a Motion to Dismiss the Complaint, based on their contention that they have not violated the law as described by Appellant. In preparation for the preliminary injunction hearing, Appellant made a Motion for Expedited Dis-

---

1. Section 13(d)(1) and Rule 13d–1, require that any "person" who acquires beneficial ownership of more than five percent of the equity securities of a publicly held company disclose their position in a Schedule 13D filing to the SEC within ten days after such acquisition. 15 U.S.C. § 78m(d)(1); 17 C.F.R. § 240.13d–1. In addition, they must disclose, "the background, and identity, residence, and citizenship of, and the nature of such beneficial ownership by such persons and all other persons by whom or on whose behalf the purchases have been or are to be effected." *Id.* A "person" can be defined to include a group of owners who have agreed to act together in "acquiring, holding or disposing of securities." 15 U.S.C. § 78m(d)(3). Section 13(d)(2) and Rule 13d–2 require that whenever any "material" change occurs in the facts set forth in a Schedule 13D, the person must promptly file an amendment disclosing the "material" changes. 15 U.S.C. § 78m(d)(2); 17 C.F.R. § 240.13d–2. Section 13(d) is "intended to protect investors by enabling them to receive facts that are material to an informed investment decision." *Purolator, Inc. v. Tiger Int'l., Inc.,* 510 F.Supp. 554, 555–56 (D.D.C.1981).

Appellant alleges, in brief, that Appellees violated the provisions of Section 13(d) by: (1) failing to properly identify, as required by Schedule 13D, Item 3 a "foreign investment company" which Appellant argues is a member of the ownership "group" as defined by the statute, (2) failing to truthfully and completely indicate the group's entire beneficial interest, which Appellant claims is in excess of 20%, (3) failing to completely disclose all "agreements and contracts" concerning MICA stock, and (4) failing to accurately describe their ownership intent as required by Schedule 13D, Item 4. Appellees, in their most recent amendment to their 13D filings indicate that their "group" controls 19.7% of MICA's outstanding shares. By contrast, Appellant alleges that the control group's ownership is in excess of 20% of the outstanding stock because an undisclosed and unnamed individual is purchasing shares of MICA, "on advice and counsel of Lichtenstein." (Plaintiff's Complaint ¶ 46). If Appellant's allegations were true, they could be the basis for claiming a violation of Section 13(d). In addition, MICA's by-laws contain a protective "poison pill" provision which could be activated if an "acquiring group" owned 20% or more of the outstanding stock and would allow the remaining 80% or less of the shareholders to purchase bargain priced shares, thereby diluting the voting power of the Appellees.

covery, requesting leave to depose witnesses and gather documents. In response, Appellees filed a Motion to Stay Discovery pending a decision on Appellees' Motion to Dismiss.

The Motion to Stay was based on Section 21D(b)(3)(B) of the newly enacted Reform Act, which provides, in relevant part, that:

In *any private action* arising under this title, all discovery and other proceedings *shall* be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence *or to prevent undue prejudice to that party.*

Section 21D(b)(3)(B) of the Reform Act, to be codified at 15 U.S.C. § 78u–4(b)(3)(B) (emphasis added). At the hearing before the Magistrate Judge, Appellant alleged that without expedited discovery it would suffer several harms that amounted to "undue prejudice" and thus it should be exempted from the Section 21D(b)(3)(B) discovery stay. It repeats these arguments here. First, Appellant contends that without concrete evidence of stock ownership by the Appellees, it will be unable to consider the viability of instituting MICA's "poison pill" provisions, discussed *supra.* In response to questioning by the Court, however, it appears that Appellant is uncertain as to whether it wants to activate the "poison pill" even in the event it were available.[2] In addition, Appellant alleges that a finding of 13(d) violations on the part of the Appellees subsequent to the February 26th vote would require an "unscrambling of the eggs" in order to rescind the election and reinstate the original Board of Directors, causing harm to the corporation in the interim. Appellant also alleges that if the Appellees gain control of the corporation at the February 26th meeting, the current case maintained by the Appellant corporation will be dismissed and the alleged violations of the federal securities laws will never be adjudicated. Thus, Appellant argues that allowing it to pursue discovery prior to the February 26th vote is necessary to avoid "undue

prejudice." After considering the arguments advanced by all parties, the Magistrate Judge denied Appellant's request to lift the statutory stay pursuant to Section 21D(b)(3)(B) of the Reform Act. Appellant now appeals that ruling.

## II. STANDARD OF REVIEW

Reconsideration of a magistrate's order is governed by 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a). Section 636(b)(1)(A) provides in part that "[a] judge of the court may reconsider any pretrial matter ... where it has been shown that the magistrate's order is clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a) echoes § 636. Rule 72(a) provides that, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Thus, for issues of fact determined by the Magistrate Judge, the District Court review must limit itself to conclusions that are "clearly erroneous." Section 636(b)(1), however, has been interpreted to provide for *de novo* review by the district court on issues of law. *Adolph Coors Co. v. Wallace,* 570 F.Supp. 202 (C.D.Cal.1983). Appellant contends that the case at bar presents a mixed question of fact and law. Because the Court agrees that the questions of fact and law in this case are at least closely intertwined and because no transcript of the proceeding below was prepared, the Court has undertaken a *de novo* review of both the legal and factual findings of the Magistrate Judge.

## III. MOTION FOR STAY OF DISCOVERY

■ At the outset, the Court wishes to emphasize its predominating concerns in this case. First, the Court is concerned with upholding the underlying purpose of the federal securities laws: to preserve a healthy market environment by ensuring full and truthful disclosure of all material informa-

---

**2.** Appellant indicated that the "poison pill" would have adverse effects for the Corporation and thus would not necessarily be used. In addition, the Court is unaware of any restriction in California law which would prevent Appellant

from instituting the "poison pill" now if it believes in good faith, as it has contended for purposes of this action, that Appellees own more than 20% of MICA.

tion. Second, the Court believes that resolving disputed legal issues *ex ante*, prior to effected events such as the shareholders meeting that is precipitating the case at bar, is preferable to an *ex post* resolution of those issues, which may require an "unscrambling of the eggs." As the Supreme Court has noted, "in corporate control contests the stage of preliminary injunctive relief, rather than post-contest lawsuits, 'is the time when relief can best be given.'" *Piper v. Chris-Craft Indus.*, 430 U.S. 1, 41–42, 97 S.Ct. 926, 949–50, 51 L.Ed.2d 124 (1976) (citing *Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 947 (2d Cir.1969) (Friendly, J.)).

## A. Standard of Law

At issue in this case is a new section of the 1934 Act, added by the Reform Act, which mandates a stay of discovery whenever a motion to dismiss is pending, unless either or both of two statutorily prescribed exceptions to that mandate apply as follows: (1) "particularized discovery is necessary to preserve evidence" *or* (2) "to *prevent undue prejudice to that party*." Section 21D(b)(3)(B) of the Reform Act (emphasis added). No party contends the first exception applies; rather, the issue on this appeal is whether the facts of this case justify application of the second exception so as to permit immediate discovery for Appellant.

"The starting point for interpreting any statute is the plain meaning of the language used by Congress." *Lewis v. McAdam*, 762 F.2d 800, 804 (9th Cir.1985). *See also, Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). If questions remain after examining the plain language, the Court may attempt to infer Congressional intent. *Central Bank of Denver v. First Interstate Bank of Denver,* —— U.S. ——, ——, 114 S.Ct. 1439, 1448, 128 L.Ed.2d 119 (1994). Congress gave very little guidance as to the meaning of Section 21D(b)(3)(B). The legislative history concerning this provision of the new law provides that:

> Courts must stay all discovery pending a ruling on a motion to dismiss, unless exceptional circumstances exist where particularized discovery is necessary to preserve evidence or to prevent undue prejudice to a party. For example, the terminal illness of an important witness might require the deposition of the witness prior to the ruling on the motion to dismiss.

Statement of Managers—The "Private Securities Litigation Reform Act of 1995," 141 Cong.Rec. H13699, H13701 (daily ed. Nov. 28, 1995); H.Rep. 104–369, 104th Cong. 1st Sess. at 63 (hereinafter "Statement of Managers").

In considering Appellant's Motion for Expedited Discovery, and Appellees' Motion for a Stay, the Magistrate Judge was required to determine whether granting a stay would cause "undue prejudice" to Appellant. Both Appellant and the SEC have suggested that the Magistrate Judge, rather than applying an "undue prejudice" standard, instead "saddled" the Appellant with the burden of proving that the stay would cause "irreparable harm."

■ This Court finds, in apparent agreement with all parties and the *Amicus* to this case, that the correct standard for granting an exception to the statutorily mandated stay of discovery is "undue prejudice" for the moving party. This "undue prejudice" standard is, as Appellant in this case has correctly stated, something less than "irreparable harm." In contrast to "irreparable harm," "undue prejudice" means improper or unfair detriment.

The Court finds that such an interpretation is not only consistent with a plain reading of the statute, but is also consistent with both the underlying objectives of the securities law in general and with the stated purposes of the Reform Act. The introductory paragraphs of the Statement of Managers for the Reform Act noted that Congress, in passing this new legislation, was "prompted by significant evidence of abuse in private securities lawsuits," which Congress found to include, "the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle." *Statement of Managers, supra*, at 59. Congress also noted, however, the broader purpose of the federal securities laws, "to pro-

tect investors and to maintain confidence in the securities markets, so that our national savings, capital formation and investment may grow for the benefit of all Americans." *Id.* Using an "undue prejudice" standard in applying the exception to the statutory discovery stay appropriately attempts to balance the competing concerns of maintaining truth and integrity in the marketplace while curbing meritless litigation.[3]

Appellant also argues that Section 21D(b)(3)(B) is simply not applicable, even under an "undue prejudice" standard, to a case such as this one which falls outside the category of lawsuits Congress was targeting with its Reform Act. Appellant argues that Congress was attempting to stem the tide of abusive litigation in the form of large class action "strike" lawsuits, rather than injunctive actions by a corporation. Appellant contends that such stays are more appropriate in the class action damages context, where time is not of the essence, than in "fast-paced" proxy contests. The SEC has echoed this sentiment, suggesting that the Reform Act was aimed more at suits claiming damages for *past harms* than at suits aimed at continuing or future violations, such as this one. While this may be true, it is but one factor which the Court should consider in interpreting the legislation as enacted, which the Court reads to *mandate* a discovery stay in "any private action" where a motion to dismiss is pending, unless one of the two exceptions is applicable. The legislation by its terms does not carve out specific types of actions which will be exempt from the stay. The Court notes, however, that the "undue prejudice" exception contemplates an analysis of the facts and circumstances surrounding a request for an exception to the mandated discovery stay, and the fact that such a request comes in the middle of a proxy con-

test may be appropriately considered by the Court as part of the totality of the circumstances.

## B. Appellant's Case: Application of the "Undue Prejudice" Standard

Thus, in the case at bar, the Court must decide if Appellant will suffer "undue prejudice" as the result of being barred from pursuing discovery until after a favorable resolution on the Motion to Dismiss. In reaching these conclusions, the Court finds that the Magistrate Judge purported to apply the "undue prejudice" standard and did not overtly base his decision on an "irreparable harm" standard. The Magistrate Judge's opinion refers to "undue prejudice" several times while never mentioning "irreparable harm" as the correct standard. The real issue is whether, based on the facts presented, Appellant established a case of "undue prejudice."

Appellant argues that the Magistrate Judge's reference to the one example provided in the *Statement of Managers, supra,* the "terminal illness of an important witness," indicates that the Magistrate Judge, despite using "undue prejudice" language, was applying what amounted to an "irreparable harm" standard. This Court agrees with the SEC that the "terminal illness of a witness" is an example pertaining to the first exception, "the need to preserve evidence," a provision which is not at issue here. The "terminal illness of a witness" is not applicable to consideration of the "undue prejudice" exception.

In reality, Appellant appears to be so persuaded by the weight of its own evidence of "undue prejudice" that the discovery denial by the Magistrate Judge must have appeared to Appellant to have been the result of application of an "irreparable harm" standard.

**3.** The Court wishes to make clear that if the Appellees have in fact violated the disclosure provisions of the federal securities laws, the purpose of which is to preserve investor confidence in the integrity of the markets and protect investor access to important and material information by which they can make informed investment decisions, that such violations should ultimately be properly sanctioned. If, in fact, Appellant had shown that the discovery stay would prejudice it because the Appellees would be shielded

from eventual liability for any material violations of the securities laws, the Court would find that an "undue prejudice" exception to the statutory stay had been shown. In the case at bar, however, the Court finds that the Appellant would have an adequate opportunity, following a favorable resolution of the Motion to Dismiss, to undertake adequate discovery if it were warranted, prior to the preliminary injunction hearing or the special shareholders meeting.

This Court does not agree. In undertaking its *de novo* review of the facts, the Court is not convinced that Appellant demonstrated *any* prejudice, let alone *undue* prejudice.

■ Appellant has failed to show that it would be prejudiced by waiting until a favorable resolution of the Motion to Dismiss before proceeding with its discovery.

At the present time, the Appellant has not shown that Section 13(d) establishes a legal right to all the information Appellant seeks in discovery. The Court questioned the parties extensively regarding the specific facts of the Section 13(d) violations. Appellees indicated that (1) Appellant was aware of the potentially material information regarding the identity of the "foreign investment company" and, (2) that Appellees' relationship with the "foreign investment company" is in the nature of a blind trust which would not be subject to the Section 13(d) disclosure requirements. These factual and legal contentions were unanswered by Appellant, thus the Court concludes that, based on the briefing submitted at this time, Appellant has not demonstrated a legal right to some of the information sought in discovery.

Similarly, the Court notes that the initial Schedule 13D and subsequent amendments filed by Appellees do indicate their potential future intention to seek control of MICA. Appellant has not yet presented any evidence to the Court which indicates that this disclosure is not sufficient to inform Appellant of Appellees' ultimate intention to seek control of MICA. Such issues will be briefed and decided at the hearing on the Motion to Dismiss, after which, if Appellant is successful in defeating the Motion, the statutory requirements for continuation of the stay will be lifted and Appellant will be free to pursue discovery prior to a hearing on the preliminary injunction, including expedited discovery, if appropriate.

Appellant urges that it will be unduly prejudiced if not permitted to discover whether Appellees control 20% or more of the MICA stock, so that Appellant may activate its "poison pill" defense to a proxy fight. Ironically, Appellant concedes that nothing is preventing it from so doing immediately, since it claims in good faith that Appellees in fact do control more than 20% of the stock. Appellant is unwilling to activate that defensive procedure for other business reasons. If so, the Court has difficulty seeing this contention as showing undue prejudice.

Finally, Appellant has repeatedly noted the short time frame surrounding this contest for corporate control, and has argued that it will be unduly prejudiced because it will be unable to complete discovery prior to the February 26th vote. While there is certainly time pressure, this is true in a majority of cases involving contests for corporate control, and thus does not constitute an "undue" burden which is unique. The Court can expedite discovery if it appears appropriate. In addition, the Court notes that Appellant would also be able to seek post-election remedies which, although potentially cumbersome and not as effective as pre-election remedies, would ferret out violations of the securities laws on the part of the Appellees. *See, e.g., Western Dist. Council v. Louisiana Pacific Corp.,* 892 F.2d 1412, 1416 (9th Cir. 1989) (awarding injunctive relief after a proxy contest was over). Thus, this Court concludes that the Magistrate Judge, considering the facts presented here, correctly applied the "undue prejudice" standard and found that Appellant had failed to meet that standard.

## IV. CONCLUSION

After consideration of all of the facts presented, the arguments and cases marshalled by all parties, and the oral presentations made at the hearing on this issue, the Court concludes that the Magistrate Judge correctly applied the discovery stay provision of the new Reform Act, Section 21D(b)(3)(B), to this case by holding Appellant to an "undue prejudice" standard, a standard it has failed to meet.

THEREFORE, the Court, after a de-novo hearing on Appellant's appeal from the Magistrate Judge's imposition of a discovery stay AFFIRMS the ruling of the Magistrate Judge and ORDERS the parties to appear before it on February 14, 1996, at 9:00 a.m. for a hearing on the Defendants' Motion to Dismiss. The Court also ORDERS the par-

ties to appear before it on February 21, 1996 at 1:30 p.m. for a hearing on the Plaintiff's Motion for a Preliminary Injunction, if appropriate. If needed, the Court will consider a request for expedited discovery if Plaintiff prevails on the Motion to Dismiss.

IT IS SO ORDERED.