**In re RATIONAL SOFTWARE SECURITIES LITIGATION.**

No. C–97–21001–JF.

United States District Court,
N.D. California,
San Jose Division.

Dec. 4, 1998.

**564**

Lionel Z. Glancy, Peter A. Binkow, Law Offices of Lionel Z. Glancy, Los Angeles, CA, for Plaintiff.

Leonard Weiss, John Halfpenny, Steefel, Levitt & Weiss, San Francisco, CA, for SG Securities & Rehan Syed.

Boris Feldman, Douglas J. Clark, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Rational Software Securities Litigation.

ORDER GRANTING IN PART AND DE-
NYING IN PART PLAINTIFFS' MO-
TION FOR LIMITED DISCOVERY

[Docket No. 70]

FOGEL, District Judge.

Plaintiffs' motion for limited discovery was heard on November 30, 1998. For the rea-

sons set forth below, the motion is granted in part and denied in part.

## I. BACKGROUND

This class action arises from Plaintiffs' allegations that they were injured as a result of insider stock trading which occurred on October 8, 1997. On that date, the Chief Executive Officer of Defendant Rational Software, Paul Levy ("Levy"), allegedly told a market analyst named Rehan Syed ("Syed") that Rational would be announcing unexpectedly low third quarter and year end earnings. Plaintiffs allege that this information was not then available to the public. Plaintiffs further allege that upon receiving the information from Levy, Syed immediately advised the clients of his firm, Defendant Cowen & Co. ("Cowen"), to sell Rational stock. Large blocks of Rational stock in fact were sold on October 8, 1997, which caused the stock price to drop nearly nineteen percent by the end of the trading day. Plaintiffs, who were not aware that Rational would be announcing low earnings, assert that they bought Rational stock on October 8, 1997 from persons who were trading on the inside information disseminated by Syed and Cowen.

Based upon the foregoing allegations, Plaintiffs filed a consolidated amended complaint on May 29, 1998, asserting federal and state law insider trading claims against Rational, Levy, Cowen and Syed. On October 5, 1998, this Court dismissed the consolidated amended complaint with leave to amend, concluding that Plaintiffs' allegations as to certain elements of their claims lacked the particularity required by the provisions of the Private Securities Litigation Reform Act of 1995 ("Reform Act"), P.L. 104–67, 109 Stat. 737 (1995). Pursuant to § 101 of the Reform Act, Plaintiffs now seek discovery in order to obtain facts necessary to amend their pleading. Defendants oppose the motion.

## II. DISCUSSION

One of the principal policy objectives of the Reform Act was to establish strict limitations on discovery proceedings in actions brought

pursuant to the Securities Act of 1933 ("1933 Act") and the Securities Exchange Act of 1934 ("1934 Act"). The Reform Act added identical language to the 1933 Act and 1934 Act providing that:

> ... all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

Reform Act, § 101(a) and (b), codified at 15 U.S.C. § 77z–1(b)(1) and 15 U.S.C. § 78u–4(b)(3)(B). Plaintiffs' motion is based on their assertion that particularized discovery is necessary to prevent them from suffering undue prejudice in this case. Specifically, Plaintiffs seek information from Cowen regarding its relationship with Rational and from the National Association of Securities Dealers ("NASD") regarding the identity of persons who traded Rational stock on October 8, 1997.[1]

Given the significance of the discovery stay provisions in the Reform Act's overall statutory scheme, there is a surprising lack of authority interpreting and applying the exceptions to the stay contained in the provisions themselves. There are only a handful of fact-specific published district court decisions and no appellate decisions which address the subject. For all practical purposes, the issues presented by the present motion are a matter of first impression.

"The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter." *Good Samaritan Hospital v. Shalala,* 508

U.S. 402, 409, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993)(internal quotations and citations omitted); *see also United States v. Hockings,* 129 F.3d 1069, 1071 (9th Cir.1997). If the statutory language is unclear, the Court will attempt to determine Congressional intent from the legislative history. *Hockings* at 1071.

■ Preliminarily, the Court agrees with Defendants that the discovery stay applies to both the federal and the state law claims asserted by Plaintiffs in this case. Congress enacted the Reform Act in response to "significant evidence of abuse in private securities lawsuits." Statement of Managers for the Private Securities Litigation Reform Act of 1995, H.R. Conf. Rep. 104–369 (Nov. 28, 1995). Congress was particularly concerned with "the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle." *Id.* Congress' attempt to address these concerns by establishing a discovery stay in federal securities actions would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims.[2] This Court therefore holds that the discovery stay mandated by the Reform Act extends to state law securities fraud claims asserted in a federal forum in conjunction with federal law claims.

■ The Court turns next to the language of the stay provisions requiring application of the discovery stay "during the pendency of any motion to dismiss." Strictly speaking, there is no pending motion to dismiss in this

---

1. Plaintiffs' moving papers include a proposed Request for Production of Documents directed to Defendant Cowen which seeks "[a]ll analyst reports and drafts of analyst reports covering Rational for January 1, 1996 to the present" as well as "[a]ll documents concerning or regarding any offers, requests, plans or committments [sic] for Cowen to provide services to Rational for any planned or consummated public offering or private placement of Rational securities." Plaintiffs also submit a proposed Third Party Subpoena directed to the NASD which requests "[a]ll documents, including but not limited to the Third Market Trade Report ("TMTR"), that identify which market makers traded Rational securities on the date October 8, 1997."

2. Indeed, it has been suggested that many plaintiffs have filed parallel actions in state and federal court precisely to avail themselves of less restrictive state discovery rules. *See, e.g.,* Stong, "Reform, What' Reform", *Business Law Today,* May/June 1998, at p. 36. As Defendants point out, concern about this practice was one of the major motivations for the recent enactment by Congress of the Securities Litigation Uniform Standards Act of 1998, P.L. 105–353, 112 Stat. 3227 (1998) which effectively precludes future litigation of major securities class actions in state courts.

case, because the Court has ruled on the motion and dismissed the consolidated complaint with leave to amend. However, the plain intent of Congress was to preclude intrusive and burdensome discovery in securities fraud actions until the plaintiffs have stated a viable claim. The Court therefore concludes that the discovery stay is triggered by the filing of a motion to dismiss and that the stay remains in effect unless and until the Court determines that the plaintiffs have alleged facts sufficient to state a cause of action for securities fraud. The Court notes that Plaintiffs in the present action have not challenged the applicability of the stay on the ground that the motion to dismiss no longer is pending.

■ Finally, the Court turns to the heart of the stay provisions, i.e., the language requiring that the stay remain in effect unless the court finds "that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." Because Plaintiffs in the present case do not contend that discovery is necessary to preserve evidence, the only question before the Court is whether Plaintiffs have shown that particularized discovery is necessary to prevent undue prejudice.

The Court is aware of only one published decision construing the meaning of the term "undue prejudice" in this context: *Medical Imaging Centers of America v. Lichtenstein,* 917 F.Supp. 717, 720 (S.D.Cal.1996). In that case a corporation sued a group seeking to elect an alternative board of directors, alleging proxy solicitation violations. The corporation asserted that it would suffer undue prejudice if not allowed to pursue discovery before an upcoming shareholder's meeting, because if defendants gained control of the corporation at that meeting, they would direct the dismissal of the lawsuit. The court, defining undue prejudice as an "improper or unfair detriment," noted that many cases involve contests for corporate control and

concluded that the imminent shareholders' meeting did not create any special or unique circumstances which would distinguish the case from any other. *Medical Imaging,* 917 F.Supp. at 720–22. The court further noted that even if defendants did gain control of the corporation, the plaintiff corporation would be able to address securities violations by means of post-election remedies.[3] *Id.* at 722. The court stated, however, that it would have lifted the discovery stay if the plaintiff corporation had demonstrated that refusal to allow discovery would shield the defendants from eventual liability for violation of securities laws. *Id.* at 721 n. 3.

This Court adopts the *Medical Imaging* court's definition of undue prejudice as an "improper or unfair detriment." Further, the Court concurs that a plaintiff may demonstrate the existence of undue prejudice by showing that refusal to allow discovery will shield the defendants from liability for securities fraud. The critical question is what a plaintiff must do to make such a showing. If the discovery restrictions of the Reform Act are to have any meaning, a plaintiff must be required to allege specific facts demonstrating more than a vague possibility that a defendant might have committed fraudulent acts which will be shielded in the absence of discovery. However, by definition, a plaintiff seeking particularized discovery prior to the determination of a motion to dismiss cannot be required to present facts demonstrating fraudulent conduct with complete specificity, because a plaintiff who could present such facts in the absence of discovery would be able to withstand a motion to dismiss and thus would not be prejudiced by the stay.

In fashioning an appropriate test for determining whether and to what extent discovery should be permitted, the Court must be guided by the intent of Congress as expressed in the Reform Act as a whole. Both the express language of the Reform Act and the legislative history make clear that Congress

---

**3.** The plaintiff corporation also contended that it needed to discover whether defendants controlled more than 20% of the corporation's stock so that it could activate a "poison pill" provision in the corporation's by-laws which would allow the remaining shareholders to purchase shares a bargain prices and thus dilute defendants' voting

powers. However, the court found that the plaintiff had not demonstrated that it wanted to activate the "poison pill" provision or that it could not do so based upon a good faith claim that defendants controlled more than 20% of the stock. *Medical Imaging,* 917 F.Supp. at 722.

intended to prevent broad, expensive "fishing expeditions" at the expense of defendants against whom no viable claim has been stated. In this context, the most reasonable interpretation of § 101 is that Congress intended to empower district courts to permit discovery notwithstanding the stay only if such discovery is very narrow in scope and then only in order to prevent injustice.

■ With these principles in mind, this Court holds that a securities class action plaintiff may establish the existence of undue prejudice by (1) alleging specific facts which while insufficient in and of themselves to meet the heightened pleading requirements of the Reform Act nonetheless give rise to a strong and credible suspicion that a defendant may be liable for securities fraud, and (2) demonstrating a reasonable probability that such defendant is likely to avoid liability absent discovery. If this threshold showing is made, a plaintiff must then show that the requested discovery is sufficiently limited and particularized that permitting the discovery will not defeat the express intent of the Reform Act by placing an undue legal and economic burden on the defendant.

■ Applying the foregoing framework to the present case, the Court concludes that Plaintiffs have made a threshold showing of undue prejudice with respect to their need for discovery regarding the relationship between Cowen and Rational. Plaintiffs have alleged narrow claims based upon the disclosure of specific inside information by a specific person on a specific date and the subsequent "dumping" of large blocks of Rational stock on that same date. For the most part, Plaintiff's allegations are supported by specific facts which at a minimum give rise to an appearance of impropriety on the part of Levy and Syed. The consolidated complaint was dismissed not because Plaintiffs' claims as a whole were vague and conclusory but primarily because Plaintiffs failed to allege facts tending to show that Levy actually received a personal benefit from disclosing the information or that Syed actually knew that Levy's disclosure was a breach of fiduciary duty, elements without which Plaintiffs cannot state a cause of action. Plaintiffs' theory is that Rational and Cowen had an ongoing relationship whereby Rational would provide Cowen with confidential information and Cowen would recommend that its customers buy Rational stock. As Plaintiffs point out, facts supporting this theory are of a type likely to be solely within Defendants' possession. Under these circumstances, even though Plaintiffs have alleged significant and specific facts in support of their insider trading claims, there is a reasonable probability that Defendants will be shielded from liability unless Plaintiffs are permitted to take limited discovery regarding the relationship between Cowen and Rational.

■ Plaintiffs also have made a threshold showing with respect to their request for the identity of persons who traded Rational stock on October 8, 1997. Although the Court dismissed Plaintiffs' state law claims because Plaintiffs did not plead that they were in privity with traders who knew the inside information allegedly provided by Levy and Syed,[4] Plaintiffs did allege specific facts concerning the unusually high volume of sales of Rational stock on the day in question as well as the fact that all of the named Plaintiffs purchased Rational stock on that day. Counsel for Plaintiffs has represented that he has been unable to ascertain the identity of the traders without the requested discovery. Given the strength and particularity of Plaintiffs' showing with respect to the communications between Levy and Syed and the subsequent plummeting of the price of Rational stock, the Court again concludes that there is a reasonable probability that Defendants will be shielded from liability absent discovery.

■ The foregoing discussion, however, does not end the present inquiry. Having concluded that Plaintiffs have made a threshold showing of undue prejudice, the Court still must evaluate Plaintiffs' actual discovery

---

4. Plaintiffs' state law claims are asserted pursuant to California Corporations Code §§ 25402 and 25502, which impose liability upon persons who trade on material, non-public information. However, only persons who actually bought securities from or sold securities to the wrongdoer may pursue a claim under these sections. *See* Cal.Corp.Code §§ 25402, 25502; *Daisy Systems Corp. v. Finegold,* 1988 WL 166235, at *5 (N.D.Cal. Sept.19, 1988).

requests in light of the policies embodied in the Reform Act and the reasoning set forth herein. The Court concludes that as presently framed, Plaintiffs' document request with respect to Defendant Cowen is grossly overbroad and would place an inappropriate and undue burden upon Cowen. While the Court is satisfied that good cause exists for permitting a narrowly focused inquiry into the nature of the relationship between Cowen and Rational as of October 8, 1997, Plaintiffs' request covers a period of almost two years and seeks without limitation a wide range of documents. Such a request cannot be characterized as one for particularized discovery.

The Court further concludes that Plaintiffs' third party discovery request for the identity of the "market makers"[5] who traded Rational stock on October 8, 1997 is vague and ambiguous, and as the Court understands it from counsel's statement at oral argument, actually only a precursor to a future request for discovery from the "market makers" of the identity of individual traders. Although third party discovery does not implicate the question of burden to named defendants to nearly the same degree as does discovery directed to the defendants themselves, the express terms of § 101 preclude *any* discovery during the pendency of a motion to dismiss unless the discovery is particularized and the Court determines that it is necessary to avoid undue prejudice. In keeping with Plaintiffs' own theory of the case, a proper request must be limited to the identity of traders whose sales were sufficiently large to impact the price of Rational stock on the day in question.

The Court has considered whether it should deny Plaintiffs' motion outright in light of the deficiencies discussed above or whether it should grant the motion in part consistent with the views expressed herein. The Court believes that judicial economy and an appropriate resolution of the instant litigation will be served best by taking the latter course. No useful purpose would be served by inviting a new motion, another round of briefing, additional months of delay in Plaintiffs' amendment of their complaint and the briefing and disposition of Defendants' inevitable motion to dismiss the amended complaint. Attorneys from both sides of the securities bar as well as academic commentators have lamented the increasing amount of time and expense consumed by law and motion proceedings in securities cases.[6]

Accordingly, the Court will permit Plaintiffs to propound up to ten (10) interrogatories upon Defendant Cowen for the purpose of inquiring into the relationship between Levy on the one hand and Syed and Cowen on the other hand as that relationship existed on October 8, 1997.[7] Plaintiffs' motion will be denied to the extent that it seeks any other discovery from Cowen. The Court also will permit Plaintiffs to issue subpoenas to the NASD and subsequently to any brokerage firms identified by the NASD for the limited purpose of determining the identity of individuals or entities which sold or placed orders to sell 25,000 shares or more of Rational stock on October 8, 1997. Finally, the Court will extend the date by which Plaintiffs are required to file an amended complaint to April 5, 1999.

## III. ORDER

Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART as follows:

(1) Plaintiffs may propound ten (10) interrogatories upon Defendant Cowen as set forth herein;

(2) Plaintiffs may issue a subpoena to the NASD requesting the identity of brokerage firms trading Rational stock on October 8, 1997;

(3) Plaintiffs may issue subpoenas to such brokerage firms requesting the identity of individuals or entities who sold or placed orders to sell 25,000 shares or

---

5. The Court assumes that Plaintiffs are referring to brokerage firms.

6. *See, e.g.,* Elias, "Reforms Can't Stop Securities Bar," *The Recorder,* July 6, 1998.

7. Plaintiffs' Notice of Motion makes no reference to any discovery request directed at Rational or Levy.

more of Rational Stock on October 8, 1997;

(4) Plaintiffs' motion is otherwise DE-NIED; and

(5) Plaintiffs shall file and serve any amended pleading not later than April 5, 1999.